UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LILLIE M. ADAMS, WANDA LEE BARNETT, DIANE ALVARADO CANTU, ROSA M. CASTILLO, CHERYL LYNN COOPER, WILLIAM ERWIN, CATHI L. GROOVER, BEVERLY LOPEZ HUGHIE, ROBERT DANIEL LIMON, SHERYL ANN MCKINNEY, JANET MEDINA, GREGORY MAURICE OWENS, MELVIN EUGENE SHELL, GILBERT D. SOSA, VERNA LOIS TAYLOR, and BARBARA ANN ZUNIGA, | § § § § § § § § § § § § § | |
| *Plaintiffs*, | § § | Civil Action No. SA-11-CA-0187-XR |
| v. | § § | |
| ACSO OF TEXAS, INC., | § § | |
| *Defendant*. | § § § | |

**ORDER ON MOTION TO COMPEL ARBITRATION**

On this date, the Court considered Defendant ACSO of Texas, Inc.'s Motion to Compel Arbitration and Stay Litigation (Docket No. 8), and the Response and Reply thereto. Defendant's motion to compel arbitration is GRANTED, but the order is stayed pending the Supreme Court's decision in *CompuCredit v. Greenwood*.

**Background**

Plaintiffs, Lillie M. Adams, Wanda Lee Barnett, Diane Alvarado Cantu, Rosa M. Castillo, Cheryl Lynn Cooper, William Erwin, Cathi L. Groover, Beverly Lopez Hughie, Robert Daniel Limon, Sheryl Ann McKinney, Janet Medina, Gregory Maurice Owens, Melvin Eugene Shell, Gilbert D.

1

Sosa, Verna Lois Taylor, and Barbara Ann Zuniga, sued Defendant, ACSO of Texas, Inc., alleging violations of the Credit Repair Organizations Act ("CROA").[1] Defendant moved to compel arbitration and stay litigation according to the arbitration provisions within the credit services contracts executed between each Plaintiff individually and the Defendant. In the alternative, Defendant moved to stay the case pending the Supreme Court's decision in *Compucredit v. Greenwood*. As a third alternative, Defendant moved to dismiss for failure to state a claim under Rule 12(b)(6).[2]

**Legal Standard**

In considering a motion to compel arbitration under the Federal Arbitration Act ("FAA"), courts must engage in a two-step analysis. *Janvey v. Alguire*, 628 F.3d 164, 182 (5th Cir. 2010). The first step of the analysis is to determine whether "'(1) . . . there is a valid agreement to arbitrate the claims and (2) . . . [whether] the dispute in question fall[s] within the scope of that arbitration agreement.'" *Id.* at 182 (quoting *Sherer v. Green Tree Servicing*, 548 F.3d 379, 381 (5th Cir. 2008)). These determinations "'[are] generally made on the basis of ordinary state-law principles that govern the formation of contracts.'" *Torres v. S.G.E. Mgmt., L.L.C.*, 397 Fed. Appx. 63, 65 (5th Cir. 2010) (quoting *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008)). Importantly, any "ambiguities as to the scope of the arbitration clause itself [are] resolved in favor of arbitration." *Volt Info. Sci., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989). After finding the arbitration agreement to be valid, the court must continue

---

[1] Pl.'s Am. Compl., Apr. 14, 2011 (Docket Entry No. 7).

[2] Def.'s Mot. to Compel Arbitration and Stay Litigation, or in the alternative Mot. to Stay, or in the alternative, Mot. to Dismiss for Failure to State a Claim, May 2, 2011 (Docket No. 8).

to step two of the analysis by examining whether "'any federal statute or policy renders the claims nonarbitrable.'" *Janvey*, 628 F.3d at 182 (quoting *Sherer*, 548 F.3d at 381). In the absence of a contrary federal statute, arbitration should be compelled in accordance with the FAA. 9 U.S.C. § 3.

**Analysis**

The credit services contracts signed by each Plaintiff individually and Defendant contain a series of arbitration provisions. As Defendant states, the contract "discloses the parties' acceptance and agreement to waive a jury trial in favor of individual arbitration no fewer than four times before the customer's signature block." Def.'s Mot. to Compel Arbitration and Stay Litigation at 3-4. Specifically, the contract contains the following provision:

> For purposes of this Waiver of Jury Trial and Arbitration provision (hereinafter the "Arbitration Provision"), the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation . . . (b) all federal or state law claims, disputes or controversies arising from or relating directly or indirectly to the . . . Contract for Purchase of Credit Services (including the Arbitration Provision) . . . and/or any past agreement or agreements between you and us; . . . (e) all claims based upon a violation of any state or federal constitution, statute or regulation . . . .

Def.'s Mot. to Compel Arbitration and Stay Litigation at Ex. A-P.

In determining whether this arbitration provision is valid, it is necessary to look to Texas law given that it is the law of the forum. *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008). In accordance with the FAA, Texas courts "employ a strong presumption in favor of arbitration." *In re Rubiola*, 334 S.W.3d 220, 225 (Tex. 2011) (citing *Cantella & Co., Inc. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996); *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995)). Applying this presumption, the arbitration provision in the credit services contract at issue is facially valid. Additionally, when assessing whether the dispute falls within the scope of the arbitration clause, "[t]he policy in favor of enforcing arbitration agreements is so compelling that a court should not

deny arbitration 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" *Id.*; *Prudential Sec. Inc.*, 909 S.W.2d at 899. Because the arbitration provision covers "all claims based upon a violation of any state or federal constitution, statute or regulation," Plaintiffs' assertions of CROA violations sufficiently fall within the scope of the provision. Finally, Texas courts "presume a party. . . who has the opportunity to read an arbitration agreement and signs it, knows its contents" and is thus, bound to the agreement. *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996) (citing *Cantella & Co., Inc.*, 924 S.W.2d at 944; *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962)). Plaintiffs and Defendant, therefore, have agreed to a valid arbitration provision within the credit services contract.[3]

Plaintiffs do not dispute the validity of the arbitration provisions within the credit services contract or argue that the controversy falls outside of the scope of the provisions. Instead, Plaintiffs' objection to arbitration relates to step two of the motion to compel arbitration analysis. Plaintiffs argue that "[c]laims brought under the CROA are not subject to arbitration because Congress granted consumers the express right to sue under the statue." Pls.' Resp. to Mot. to Compel Arbitration at ¶1.[4] Plaintiffs' reference to "the express right to sue under the statute" concerns Section 1679c of the CROA. 15 U.S.C. § 1679c(a). The section contains a list of consumer rights that credit repair organizations must disclose prior to entering into an agreement with a consumer. *Id*. One right that organizations must disclose reads as follows: "You have a right to sue a credit repair organization that violates the Credit Repair Organization Act." Furthermore, Section 1679f of the CROA contains

---

[3] Plaintiffs point out that the arbitration provisions in the individual contracts are not identical. Thus, each arbitration will proceed according to the terms of the individual agreements.

[4] Pls.' Resp. to Mot. to Compel Arbitration, May 11, 2011 (Docket No. 9).

the following non-waiver provision: "Any waiver by any consumer of any protection provided by or any right of the consumer under this subchapter– (1) shall be treated as void; and (2) may not be enforced by any Federal or State court or any other person." 15 U.S.C. § 1679f(a).

Plaintiffs urge the Court to adopt the Ninth Circuit's reasoning in *Greenwood v. CompuCredit* and to interpret the "right to sue" and non-waiver provisions as excluding arbitration as a means of conflict resolution in cases involving credit repair organizations. 615 F.3d 1204, 1209 (9th Cir. 2010), *cert granted*, No. 10-948. In reaching this conclusion, the Ninth Circuit opined that when the language "right to sue" is given its "plain and ordinary meaning," it is properly defined as a "right to bring an action in a court of law." *Id.* at 1208. Relying on this definition, the Ninth Circuit then held that "[a]s a matter of parlance, reference, and common sense, we cannot conclude that when Congress used the word 'sue,' it really meant 'arbitrate.'" *Id.* at 1209. Considering this in conjunction with the non-waiver provision, the Ninth Circuit concluded that Congress intended to provide consumers with the non-waivable right to bring claims in court against credit repair organizations. *Id.* at 1214.[5]

Conversely, Defendant asks the Court to align with the Third and Eleventh Circuits in holding CROA claims to be arbitrable. In *Gay v. CreditInform* and *Picard v. Credit Solutions, Inc.*, the Third and Eleventh Circuits, respectively, rejected the argument that the CROA created a non-waivable, substantive "right to sue" in a judicial forum. In *Picard*, the Eleventh Circuit acknowledged that the statute created the right of a consumer to receive a disclosure of rights from the credit repair organization prior to engaging in a transaction. *Picard v. Credit Solutions*, 564 F.3d 1249, 1255 (11th Cir. 2009); *see* 15 U.S.C. § 1679c(a). One such right to be disclosed was the right of the consumer

---

[5] One district court in the Fifth Circuit has held that CROA claims are non-arbitrable. *See Alexander v. U.S. Credit Mgmt., Inc.*, 384 F. Supp. 2d 1003, (N.D. Tex. 2005).

5

to bring a cause of action against the organization. *Picard*, 564 F.3d at 1255. Thus, the Eleventh Circuit stated, the CROA did not create a substantive "right to sue," but rather, required credit repair organizations to disclose to consumers that this right existed. *Id.* Given this analysis, the Eleventh Circuit found no basis to conclude that Congress intended to prohibit arbitration in cases involving credit repair organizations. *Id.* Instead, the Court was confident that "[t]he substantive rights created in the CROA are entirely preserved in an arbitral forum." *Id.* (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637, 105 S. Ct. 3346, 3359 (1985)).

Applying a similar line of reasoning, the Third Circuit in *Gay* stated that "[r]ather than creating substantive rights the statute[] merely recognize[s] that a party who believes she has been wronged may bring an action in a court seeking a remedy for her injuries." *Gay v. CreditInform*, 511 F.3d 369, 382 (3d Cir. 2007). The Court found no indication that Congress intended to prohibit arbitration in the context of CROA disputes, nor did the plaintiffs adequately show that the rights that the CROA actually did create could not be adequately protected by the arbitral process. *Id.* Furthermore, given that the non-waiver provision in Section 1679f only applies to "any right of the consumer under this subchapter," the Third Circuit concluded that the right to bring a cause of action in a judicial forum was not covered by the non-waiver provision in Section 1679f because it was not a right created within the statute. *Id.* at 383.

Considering these opposing interpretations of the CROA and the fact that the Fifth Circuit has not yet considered this issue, this Court chooses to follow the interpretations of the Third and Eleventh Circuits and holds that the "right to sue" language of Section 1679c(a) does not exclude arbitration as a means of settling disputes related to CROA violations. Viewing both Circuits' reasoning in conjunction with the federal policy of upholding arbitration agreements expressed

through the FAA and the fact that Congress did not include an explicit prohibition of arbitration within the CROA, this Court finds it appropriate to enforce the arbitration clause within the credit services contract. However, the Supreme Court recently granted certiorari in the case of *CompuCredit v. Greenwood* to resolve the issue of "whether claims arising under the [CROA] are subject to arbitration pursuant to a valid arbitration agreement." Petition for Writ of Certiorari at 1, *CompuCredit Corp. v. Greenwood*, No. 10-948. Because the question to be answered in *CompuCredit* is the same as that in the current case, this Court will stay its order compelling arbitration pending the Supreme Court's holding in *CompuCredit.*

## Conclusion

Plaintiffs' claims are subject to valid arbitration agreements. The "right to sue" provision of the CROA, Section 1679c(a) and the non-waiver provision of Section 1679f(a) do not prohibit the enforcement of the arbitration agreement. Therefore, Defendant's Motion to Compel Arbitration and Stay Litigation (docket no. 8) pursuant to 9 U.S.C. § 3 is GRANTED, but the order and all proceedings in this case are STAYED pending the Supreme Court's decision in *CompuCredit v. Greenwood*. Defendant's alternative Rule 12(b)(6) motion is DISMISSED AS MOOT.

It is so ORDERED.

SIGNED this 13th day of June, 2011.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE